Winslow E. WINANS; Eleanor C. Winans, Plaintiffs–Appellees,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant–Appellant.

No. 90–56252.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 4, 1991.

Submission Deferred Jan. 10, 1992.

Submitted Feb. 25, 1992.

Submission Vacated March 30, 1992.

Resubmitted April 23, 1992.

Decided June 29, 1992.

William D. Hughes and Randall M. Nunn, Hughes & Nunn, San Diego, Cal., Peter Abrahams, Douglas G. Benedon, Horvitz & Levy, Encino, Cal., for defendant-appellant.

Susan E. Basinger, McInnis, Fitzgerald, Rees, Sharkey & McIntyre, San Diego, Cal., for plaintiffs-appellees.

Pamela E. Dunn, Robie & Matthai, Los Angeles, Cal., for amicus curiae USAA Cas. Ins. Corp.

Before: PREGERSON, CANBY, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

When Winslow and Eleanor Winans found cracks and separations in the walls and ceiling of their house, they made a claim under their homeowners policy with State Farm Fire and Casualty Company. State Farm declined coverage on the ground that the contractor's negligence in failing to remove loose soil from beneath the house during construction was only discovered by an expert after the damage had been caused, and was therefore a latent defect subject to the policy's latent defect exclusion.[1]

In a published opinion, the district court denied State Farm's motion for summary judgment on the Winanses' claims for breach of contract and bad faith. *Winans v. State Farm Fire & Casualty Co.*, 743 F.Supp. 733 (S.D.Cal.1990). The district court distinguished *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1342 (9th Cir.1989), where we said in an alternative holding that a latent defect is one that is not "readily discoverable" at the time the parties entered into the policy, on the footing that State Farm's experts discovered the possibility of negligence by the contractor who built the Winanses' house "after only a preliminary investigation." *Winans*, 743 F.Supp. at 738. The district court also concluded that triable issues were presented because the subdivision's plans revealed that the Winanses' home was built on a sloped lot which required fill soil, and the investigators knew that others in the neighborhood were involved in litigation with the same contractor. *Id.* The district court's order was certified for appeal pursuant to 28 U.S.C. § 1292(b).

*Acme Galvanizing Co. v. Fireman's Fund Ins. Co.*, 221 Cal.App.3d 170, 270 Cal.Rptr. 405 (1990), subsequently crossed paths with the district court's decision in this case. In *Acme Galvanizing*, the California Court of Appeal picked up on our discussion of latent defects in *Tzung*, and held that where "the defect is not apparent upon reasonable inspection but only after a post-failure examination by an expert, then the resulting loss is caused by a 'latent defect.'" *Id.* at 178, 270 Cal.Rptr. at 410. We are persuaded that under California law, a latent defect exclusion applies to third-party negligence that is discoverable only through subsequent intensive expert investigation. Because there is no evidence that the contractor's negligence in this case was discoverable short of an in-depth expert inspection after-the-fact, we believe that State Farm is entitled to summary judgment. Accordingly, we reverse.

I

In January of 1985, the Winanses made a claim under their State Farm homeowners insurance policy after noticing cracks and separation in footings, slabs, walls, and ceilings in their home. State Farm hired subsurface exploration experts, MV Engineering, to investigate the cause of this damage. After a preliminary inspection, which consisted of a visual inspection and the digging of two shallow test holes, MV Engineering's report indicated that the cracks might be due to soil settlement[2] and recommended a subsurface investigation. In May of 1985, MV bored four holes 37 feet deep, and concluded that the damage was caused by failure to remove "loose alluvial soil" before the house was built.[3]

---

1. Both the district court and State Farm on appeal raised the separate issue of whether third-party negligence that occurs while protecting against earth movement, which is an excluded risk, is nevertheless covered in an all-risk homeowners policy. State Farm has withdrawn this argument in light of the California Supreme Court's decision in *State Farm Fire & Casualty Co. v. Von Der Lieth*, 54 Cal.3d 1123, 2 Cal. Rptr.2d 183, 820 P.2d 285 (1991). We are therefore concerned only with the issue of whether the latent defect exclusion applies.

2. MV's preliminary report stated that

the cracks may be due to settlement of the house.... Although the cracks appear relatively innocuous at this time, the history of cracking of neighboring houses by settlement on this same fill mass would dictate that this be investigated as a cause of cracking to the subject house.

3. MV's second report stated that

the most probable cause of cracking is from settlement of the northern side of the building possibly in conjunction with heave from expansive soil toward the center of the building. Our tests and investigations reveal the fill is

State Farm then denied the Winanses' claim based, in part, on the exclusion for "latent defect[s]" in the Winanses' all-risk homeowners policy.

We review de novo the district court's denial of State Farm's motion for summary judgment. Summary judgment is appropriate if, when the evidence is viewed in the light most favorable to the non-moving party, no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. *Home Savings Bank v. Gillam*, 952 F.2d 1152, 1158 (9th Cir.1991).

## II

The Winanses argue that State Farm's reliance on *Tzung* and *Acme Galvanizing* is misplaced because the negligent construction was "readily discoverable" and is therefore not a latent defect. In *Tzung*, the owners of an apartment building, after noticing cracks in the walls, made a claim under their homeowners policy. The policy excluded faulty workmanship and "inherent or latent defects." We held that both exclusions applied. 873 F.2d at 1342. So far as the latent defect exclusion was concerned, the Tzungs argued that the design defects were readily discoverable by reviewing the plans of the building. We thought this unavailing, as the owners relied entirely "on the opinions of two experts who conducted a thorough examination of the apartment building and the soils beneath it." *Id.* Because the defects were discovered only after intensive examination by an expert, we thought the defects were not "readily discoverable" and thus were within the exclusion for inherent or latent defects. *Id.* (citing *Merz v. Allstate Ins. Co.*, 677 F.Supp. 388 (W.D.Pa.1988), and *Essex House v. St. Paul Fire & Marine Ins. Co.*, 404 F.Supp. 978 (S.D.Ohio 1975)).

Noting the "paucity of California case law interpreting" latent defect provisions, the court in *Acme Galvanizing* followed

*Tzung* in determining that a similar latent defect exclusion precluded coverage of losses caused by the rupture of an 84-ton galvanizing kettle. 221 Cal.App.3d at 177–78, 270 Cal.Rptr. at 409–10. Subsequent "destructive testing" by an expert indicated that the kettle rupture was caused by poor welding techniques; the welding defect, however, was not apparent upon reasonable inspection. *Id.* at 175–78, 270 Cal. Rptr. at 408–10. In concluding that such evidence shows the defect was latent as a matter of law, the court adopted the standard under California Code of Civil Procedure § 337.15—which establishes the statute of limitations for actions arising from latent construction defects—as appropriate for determining whether a defect is latent in the context of the exclusionary provisions of an all-risk policy. Section 337.15(b) defines a latent defect as one "which is not apparent by reasonable inspection." *Id.* at 178, 270 Cal.Rptr. at 410 (quoting Cal.Civ.Proc.Code § 337.15(b)). Thus,

> where defective construction, design, or fabrication of property results in the property's failure or deterioration before its normal life, and the defect is not apparent upon reasonable inspection but only after a post-failure examination by an expert, then the resulting loss is caused by a "latent defect."

*Id.*

The reasoning of *Acme Galvanizing* reinforces our own in *Tzung*. Other California opinions point in the same direction. *See, e.g., Preston v. Goldman*, 42 Cal.3d 108, 123, 227 Cal.Rptr. 817, 826, 720 P.2d 476, 485 (1986) (under Cal.Civ.Proc.Code § 337.15, patent defect "is one which can be discovered by such an inspection as would be made in the exercise of ordinary care and prudence"; latent defect is "one which is hidden and which would not be discovered by a reasonably careful inspection") (quoting *Wagner v. California*, 86 Cal.App.3d 922, 927, 150 Cal.Rptr. 489, 492 (1978)); *Butki v. United Servs. Auto.*

---

slightly under the 90% relative compaction requirement, but not enough in our opinion to cause the settlement. Further analysis of the drilling and samples of material below the deepest portion of the fill indicate a six to

eight foot thick layer of loose alluvial soil. It is believed that this material has subsided from the weight of the fill and has caused the western portion of the house to settle and crack.

*Ass'n,* 225 Cal.App.3d 464, 466, 274 Cal. Rptr. 909, 909–10 (1990) (deficiencies in residential property excluded by, *inter alia,* latent defect provision); *State Farm Fire & Casualty Co. v. Superior Court,* 215 Cal.App.3d 1435, 1444–45, 264 Cal.Rptr. 269, 274–75 (1989) (same).

We are not persuaded that *Acme Galvanizing* is distinguishable, as the Winanses argue, because the policy there was commercial whereas theirs is residential. The Fireman's Fund policy at issue in *Acme Galvanizing* was also an all-risk policy and nothing in the court's reasoning suggests that it does not apply with equal force to a latent defect exclusion in an all-risk homeowners policy.

■■■ Therefore, we follow *Tzung* and *Acme Galvanizing* and hold that a defect that is not apparent upon reasonable inspection, but only comes to light after an intensive post-failure expert examination, is a latent defect for purposes of State Farm's latent defect exclusion.

### III

The Winanses argue that the district court correctly denied State Farm's summary judgment motion even under the *Tzung* or *Acme Galvanizing* standard because they raised triable issues about whether the alleged negligence was "readily discoverable." The district court found as an uncontroverted fact that the experts discovered the possibility of negligence by the contractor after only a preliminary investigation. The district court was also influenced by the fact that MV immediately discovered that the contractor was involved in litigation concerning other homes in the subdivision. *Winans,* 743 F.Supp. at 738. We read the undisputed evidence differently.

The preliminary investigation by State Farm's experts revealed only that the "cracks may be due to settlement"; no mention was made of possible third-party negligence in failing to remove loose alluvial soil until the second, more thorough, investigation. Nor is there any evidence that the neighbors' litigation revealed that the contractor's alleged failure to remove loose alluvial soil from beneath their houses during construction caused the damage such that the nature of the third-party negligence was apparent upon reasonable inspection.

Here, as in *Tzung,* the Winanses' "entire theory of liability is premised on the opinions of … experts who conducted a thorough examination of the … building and the soils beneath it." 873 F.2d at 1342. Because the evidence is uncontroverted that the third-party negligence which led to the defective grading was not apparent upon a reasonable inspection and was discovered only after post-failure expert examination, State Farm is entitled to summary judgment.

The decision of the district court is REVERSED and the case REMANDED with instructions to enter judgment in favor of State Farm.